[Cite as *Schmoldt v. Schmoldt*, 2024-Ohio-513.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| DANIEL R. SCHMOLDT, | CASE NO. 2023-G-0018 |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the<br>Court of Common Pleas |
| JILL SCHMOLDT, | |
| Defendant-Appellant. | Trial Court No. 2014 DC 000049 |

# O P I N I O N

Decided: February 12, 2024
Judgment: Affirmed in part, reversed in part, and remanded

---

*Vincent A. Stafford*, Stafford Law Co., LPA, North Point Tower, 1001 Lakeside Avenue, Suite 1300, Cleveland, OH 44114 (For Plaintiff-Appellee).

*Carol A. Szczepanik*, P.O. Box 214, 10808 Kinsman Road, Newbury, OH 44065 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Jill Schmoldt, appeals the May 4, 2023 judgment entry of the Geauga County Court of Common Pleas adopting the magistrate's decision. The trial court denied appellee's, Daniel Schmoldt's, Motion to Modify Allocation of Parental Rights and declined to terminate the parties' March 28, 2018 Amended Shared Parenting Plan ("SPP"); granted appellee's September 22, 2021 Motion to Show Cause regarding appellant's failure to timely enroll one of their minor children in mental health treatment as required by an August 18, 2021 Agreed Judgment Entry; and denied appellant's

Motion to Show Cause regarding appellee's failure to comply with the Amended Sharded Parenting Plan by not properly notifying appellant of travel plans.

{¶2} Appellant has raised seven assignments of error arguing the following: (1) the trial court erred by finding appellant failed to enroll the minor child Ca.S. in an intensive outpatient treatment program (IOP) pursuant to the terms of the parties' August 18, 2021 Agreed Judgment Entry; (2) the trial court abused its discretion by finding that appellant admitted the minor child Mad.S. engaged in underage drinking while in appellant's care; (3) the trial court erred by not adopting the Guardian ad Litem's (GAL) recommendation to terminate the parties' Amended Shared Parenting Plan; (4) the trial court erred by not finding appellee in contempt for failing to timely notify appellant about travel plans with two of the children; (5) the trial court erred by determining appellant had voluntarily dismissed a portion of her Motion to Show Cause; (6) the trial court erred by finding appellant in contempt; and (7) the trial court erred by ordering appellant to pay $2,500 for appellee's attorney fees.

{¶3} Having reviewed the record and the applicable caselaw, we find appellant's assignments of error have some merit. The trial court did not abuse its discretion in finding appellant violated the parties' August 18, 2021 Agreed Judgment Entry when appellant decided to wait to enroll Ca.S. in the IOP until December 2021 and the court did not err in finding her in contempt and ordering her to pay $2,500 in attorney fees. Next, the trial court did not abuse its discretion in finding appellant did not present sufficient evidence to prosecute her Motion to Show Cause for appellee's failure to timely notify her about travel plans with two of the children. Further, the trial court did not err in maintaining the

2

Agreed Shared Parenting Plan where the court found doing so was in the best interest of the minor children despite the parties' communication issues.

{¶4} However, the trial court did err by failing to rule on a portion of appellant's Motion to Show Cause which she did not voluntarily dismiss. In addition, the trial court erred in finding that appellant admitted to incidents involving Mad.S. engaging in underage alcohol consumption under appellant's care.

{¶5} Therefore, we affirm the judgment of the Geauga County Court of Common Pleas in part, reverse in part, and remand with instructions for the trial court to rule on the portion of appellant's Motion to Show Cause relating to appellee's failure to provide proof of $7,500 support payment. Further, the trial court is instructed to correct its findings of fact to reflect that appellant did not admit to any incidents involving Mad.S. engaging in underage alcohol consumption under appellant's care.

### Substantive and Procedural History

{¶6} Appellant and appellee were married on November 24, 2002, and divorced on July 11, 2014. The marriage produced four children, Mar.S. DOB 10-27-2003, Mad.S. DOB 8-8-2005, Ca.S. DOB 11-12-2006, and Co.S. DOB 4-12-2009. At the time of the divorce, the parties used a standard parenting time schedule. However, the parties later entered into an Agreed Amended Shared Parenting Plan ("SPP") on March 28, 2018. The SPP was later modified through an Agreed Judgment Entry on August 18, 2021 ("MSPP"). Mar.S. had been emancipated by the time the underlying motions in this case were before the trial court.

{¶7} Relevant to this appeal, the SPP provided that a parent taking a child on vacation must notify the other parent 14 days in advance of the dates the children will be

3

on vacation and to also provide "information regarding any flights by which the children will be traveling, and an address and phone number at which the children can be reached during vacation."

{¶8} Also relevant, the MSPP included a provision relating to Ca.S.'s counseling. It provided that Ca.S. "shall immediately engage in an Intensive Outpatient Treatment Program (IOP) at either The Cleveland Clinic Foundation or Highland Springs. * * * In the event that [Ca.S.] is unable to immediately engage in an IOP, Dr. Fulchiero shall recommend a counselor for [Ca.S.] and begin counseling as soon as possible."

{¶9} On September 22, 2021, appellee filed a Motion to Modify Allocation of Parental Rights and Responsibilities. He sought the modification because he claimed that appellant was not facilitating possession of Ca.S. and had not complied with the counseling requirements set forth in the MSPP. In addition, appellee filed a Motion to Show Cause regarding appellant's failure to comply with the terms of the MSPP. Appellee requested that appellant pay the attorney fees associated with prosecuting the Motion.

{¶10} On March 22, 2022, appellant filed a Motion to Show Cause regarding appellee's failure to comply with several provisions of various judgment entries. Appellant claimed that appellee had not made timely property settlement payments on the 15th of each month, making such payments as late as the 26th day of the month. Second, she claimed appellant failed to provide evidence of a $7,500 support payment appellee claimed to have made in July 2017 as required by an April 16, 2018 judgment entry pertaining to an overpayment of spousal support. Third, she claimed that appellee had previously been ordered to pay appellant $1,750 in attorney fees within 30 days of a March 6, 2020 judgment finding appellee had filed an unmeritorious motion to show cause

4

against appellant. She said appellee had failed to make such payment. Fourth, appellant claimed that appellee had not timely paid his share of extracurricular expenses for the minor children within 30 days of receipt of the bill. Finally, appellant claimed appellee violated the SPP by taking Mad.S. and Co.S. out of town on February 18, 2022 and that she was not aware of the trip until one of the minor children informed her of it on February 16, 2022. She also said that appellee failed to provide flight information, incorrectly informed appellant of the return time, and that the trip extended into her parenting time by one-half day.

{¶11} On July 18 and 19, 2022, the trial court, through a magistrate, held a hearing on the three pending post-divorce decree motions.

{¶12} Counsel for appellee first moved to dismiss the portion of appellant's Motion to Show Cause because the $1,750 appellee owed for attorney fees had been reduced to a judgment and was in collection proceedings. He therefore argued the trial court lacked jurisdiction to proceed. Appellant opposed the dismissal and the magistrate said it would reserve ruling on the Motion to Dismiss. On day two of the hearing, appellee tendered a check for $1,750 and appellant voluntarily dismissed that aspect of her Motion to Show Cause. However, appellant maintained all other portions of her Motion to Show Cause, including appellee's failure to provide evidence of the $7,500 support payment.

{¶13} Appellee testified that he regularly sees all of his children except for Ca.S. He explained that he has only seen Ca.S. three times in the preceding year. He further said he regularly communicates with all of his children but that Ca.S. does not engage with him or attend parenting time with him.

5

**{¶14}** Ca.S. suffers from depression and other mental health issues. Appellee said that he and appellant have had a disagreement about how to best address these concerns. In particular, appellee opposed providing medications to Ca.S. However, appellant provided anxiety medications to Ca.S. and appellee became aware of this because Ca.S. was hospitalized for an overdose.

**{¶15}** He said that after the MSPP, he attempted to have Ca.S. immediately enrolled in an IOP through Highland Springs. Both appellant and appellee attended an initial intake meeting at Highland Springs in August. However, appellee said that appellant "refused to enroll her because she said she was going to miss school. And I was more concerned about, that, you know, all the events that had been taking place, and I thought it was more important that she got counseling than school." Appellee acknowledged that Highland Springs needed to perform an assessment before determining what course of treatment was appropriate for Ca.S. He denied that Highland Springs recommended an outpatient treatment program at that time. Ca.S. did engage in an outpatient treatment program beginning in December 2021.

**{¶16}** Appellant testified that Ca.S.'s school year had started by the time she and appellee were able to have an intake meeting at Highland Springs. She further said that Highland Springs did not offer inpatient treatment for Ca.S. and recommended a five-week outpatient program that meets four days per week, with meetings starting at 1:00 p.m.

**{¶17}** Appellant said the program would "interrupt" Ca.S.'s "school day a lot, um, so that was a major concern of mine. So I discussed it with Highland Springs and Dr. Fulchiero and Rachel Croce what would be the best approach for getting her in that

6

program. * * *[T]hey agreed that pulling her out of school would cause her more stress." Appellant denied that there was ever a suggestion to enroll Ca.S. in a three-month inpatient program. At the August intake meeting, appellant said the earliest Highland Springs could offer Ca.S. an IOP would be "the next month or two" September or October at the earliest. Appellant said that she and Ca.S.'s healthcare providers felt she should start an IOP that did not disturb her school schedule. Ca.S. started the outpatient program in December during her school's winter break.

{¶18} On cross-examination, appellant said she knew the legal requirements to immediately enroll Ca.S. in the IOP and did not enroll her immediately, seek to modify the court order, or provide documentation from Ca.S.'s healthcare providers to demonstrate why a delay was necessary. She also admitted that Ca.S. improved after attending the IOP in December, that she struggled between August and December, and would have likely improved sooner had she attended the IOP sooner.

{¶19} Appellant recounted Ca.S.'s overdose incident. She said that Ca.S. had some friends over at the house and discovered they were drinking alcohol and vaping. Appellant confiscated the items and called the friends' parents to pick them up. Later that night Ca.S. woke appellant up to tell her she had taken all her anti-depressants, vomited, but was worried she could still be overdosing. Appellant took her to the hospital for treatment.

{¶20} Appellant also recounted two instances where Mad.S. became drunk. She said Mad.S. was at appellee's house and appellant found out she had been drinking. Appellant went to appellee's house to pick up Mad.S. and bring her to appellant's house. In a different incident, the school contacted appellant about Mad.S. When appellant

7

arrived, she found Mad.S. "dehydrated and hung over." She had been at appellee's house the night before. Appellant denied there were other incidents involving drinking.

{¶21} Appellant testified that appellee had failed to provide evidence of the $7,500 property settlement check as required by the April 16, 2018 Judgment Entry and that such payment was still outstanding. The issue related to the amount of an overpayment of support. As a result of the overpayment, appellant claimed she did not receive her July 2017 monthly $7,500 payment while appellee maintained that he had made the payment. The April 16, 2018 Judgment Entry determined that appellant would repay $1,116.34 to appellee as an overage. It further stated that appellant would "provide evidence of a $7,500 payment * * * [made] in July 2017. The [appellant] will repay the [appellee] the $7500 within seven days of receipt of such evidence."

{¶22} Appellant next testified that appellee had failed to reimburse his share of certain medical expenses and extracurricular activities. She also said that appellee routinely made his monthly $7,500 property settlement payment late. She said he typically sends the payment through the children and that the payments come late by a few days to up to two weeks late.

{¶23} Finally, she testified that the children informed her on February 16, 2022, that appellee was planning to take the children on a flight to Arizona on February 18, 2022. She received no response from appellee until February 18, after the flight had departed. He said they would return on February 20 and provided a flight number, but no flight time. Appellant said on February 20, she learned from Mad.S. that they were not returning until February 21. However, Mad.S. decided to return early to attend softball

8

tryouts and flew back by herself. Co.S. returned on February 21 with appellee. Appellant said that February 21 was one of her parenting dates.

{¶24} The GAL, Denise Cook, testified about her report and evaluation of the minor children. Cook recommended the termination of the parties' Amended Shared Parenting Plan because the parties were unable to communicate sufficiently to facilitate shared parenting. However, Cook acknowledged all of the children, except Ca.S., were doing well under the current plan. She also recommended that appellee's parenting time with Ca.S. "be reinstated at the discretion of a reunification counselor[.]"

{¶25} The magistrate issued findings of fact and conclusions of law on December 29, 2022. Relative to this appeal, the magistrate's decision found appellant in contempt of court by violating the terms of the MSPP by delaying Ca.S.'s enrollment in the Highland Springs IOP. The decision also recommended that appellant pay $2,500 for appellee's attorney fees. The magistrate's decision concluded appellant's evidence was "insufficient to support her claim" that appellee failed to provide adequate travel notice, misrepresented travel dates, and deprived her of parenting time as a result of the travel plans.

{¶26} The magistrate determined that appellant had dismissed the portion of her show cause motion relating to appellee's failure to pay $1,750 in attorney fees. The magistrate said that "the remaining prongs of [appellant's] Motion to Show Cause, with exception of [appellee's] alleged refusal" to provide travel itinerary and deprivation of parenting time "were also voluntarily dismissed by [appellant], without prejudice."

{¶27} The magistrate's decision determined it was not in the minor children's best interest to terminate or modify the shared parenting plan. However, with respect to Ca.S.,

9

the decision recommended that appellee's parenting time be held in abeyance pending Ca.S. and appellee attending individual and joint counseling time with the aim of reunification. The decision also concluded that appellant admitted to "an incident(s) involving [Mad.S.] and underage drinking while [Mad.S] was in her care."

{¶28} On January 12, 2023, appellant filed objections to the magistrate's decision, and after filing the transcript of the hearing, filed supplemental objections to the magistrate's decision. Appellant's objections were substantively the same as her assignments of error on appeal.

{¶29} On May 4, 2023, the trial court adopted the magistrate's decision in its entirety.

{¶30} Appellant timely appealed, raising seven assignments of error. Appellee has not filed an answer brief.

**Assignments of Error and Analysis**

{¶31} For ease of discussion, we address appellant's assignments of error out of order and at times in a consolidated fashion.

{¶32} Appellant's third assignment of error states:

{¶33} "[3.] The trial court erred and abused its discretion in not adopting the Guardian ad Litem's recommendation that the Amended Shared Parenting Plan be terminated and that the Defendant Jill Schmoldt be made the custodial and residential parent of the three minor children."

{¶34} "[D]ecisions involving the custody of children are accorded great deference on review." *In re K.R.,* 11th Dist. Trumbull No. 2010-T-0050, 2011-Ohio-1454, ¶ 28. "Thus, any judgment of the trial court involving the allocation of parental rights and

10

responsibilities will not be disturbed absent a showing of an abuse of discretion." *Id.* "When reviewing an appeal from a trial court's adoption of a magistrate's decision, an appellate court must determine whether the trial court abused its discretion in adopting the decision." *Huntington Natl. Bank v. Betteley*, 11th Dist. Lake No. 2015-L057, 2015-Ohio-5067, ¶ 17.

{¶35} "The term 'abuse of discretion' is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-208, ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 [148 N.E. 362] (1925)." *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, ¶ 9. Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.*, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.*, quoting *Beechler* at ¶ 67.

{¶36} "The highly deferential abuse-of-discretion standard is particularly appropriate in child custody cases since the trial judge is in the best position to determine the credibility of the witnesses and there 'may be much that is evident in the parties' demeanor and attitude that does not translate well to the record.'" *In re K.R., supra*, at ¶ 30, quoting *Wyatt v. Wyatt*, 11th Dist. Portage No. 2004-P-0045, 2005-Ohio-2365, ¶ 13. "In so doing, a reviewing court is not to weigh the evidence, 'but must ascertain from the

11

record whether there is some competent evidence to sustain the findings of the trial court.'" *Id.*, quoting *Clyborn v. Clyborn*, 93 Ohio App.3d 192, 196, 638 N.E.2d 112 (3d Dist.1994).

{¶37} R.C. 3109.04(E)(2)(c) provides, "[t]he court may terminate a prior final shared parenting decree that includes a shared parenting plan * * * upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children." "In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in" R.C. 3109.04(F)(1) and (F)(2). R.C. 3109.04(F)(2).

{¶38} The factors in R.C. 3109.04(F)(1) are:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to [certain criminal offenses] * * *;

12

Case No. 2023-G-0018

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

{¶39} The factors in R.C. 3109.04(F)(2) are:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem." R.C. 3109.04(F)(2)(a)-(e).

{¶40} The trial court said that the evidence presented indicated that, with respect to Mad.S. and Co.S., the parties have "functioned and operated effectively under the terms of the Shared Parenting Plan and Amended Shared Parenting plan with respect to their care and support." Thus, the court did not consider termination of the Amended Shared Parenting Plan to be in the best interest of Mad.S. or Co.S.

{¶41} However, the trial court said that appellant and appellee have "not" been able to communicate effectively in their "attempt to parent" Ca.S. "This inability and failure of both parties has, in turn, caused a severe disruption in appellee's parenting time and his relationship with [Ca.S.]." The court said: "Both parents share the blame here" noting that appellant has made unilateral healthcare and treatment decisions, including "her decision to delay [Ca.S.'s] entry into the IOP at Highland Springs until Winter, 2021." Conversely, the court found that appellee "has refused to acknowledge that [Ca.S.] faces

13

mental health challenges * * *. [Appellee] seems unwilling or unable to accept the fact that his * * * daughter is different from her siblings." The court concluded: "Both parties' attitudes and actions have caused a stalemate to ensue * * *."

{¶42} The court decided the evidence it received did not support a change in custody or termination in the Amended Shared Parenting Plan because "[b]oth parties' opinions and points of view have served [Ca.S.] and the parties' other children well in the past and it is in [Ca.S.'s] best interest that joint decision-making be maintained." The court did determine that appellee's parenting time with Ca.S. should be held in abeyance pending Ca.S. and appellee attending reunification counseling sessions.

{¶43} In *Thomas v. Thomas*, 11th Dist. Trumbull No. 2023-T-0015, 2023-Ohio-3941, we addressed a similar inability of the parents to cooperate and make decisions jointly with respect to their children. *Id.* at ¶ 45. Although under R.C. 3109.04(F)(2)(a) this factor constitutes grounds for terminating a shared parenting plan, we noted that termination of a shared parenting plan "is not required whenever this factor is implicated." *Id.* at ¶ 45-46. In *Thomas* we affirmed the trial court's decision to maintain a shared parenting plan where the trial court found the "dynamic" between the parties was "working for the benefit of" the children and that their "cooperation and communication problems were not detrimental to the children." *Id.* at ¶ 48.

{¶44} Here, the magistrate's decision appropriately considered the applicable factors in R.C. 3109.04(F)(1) and (F)(2) in determining the children's best interest, and its findings are supported by competent, credible evidence in the record. The trial court did not abuse its discretion in adopting the magistrate's decision.

{¶45} Accordingly, appellant's third assignment of error is without merit.

14

{¶46} Appellant's first, sixth, and seventh assignments of error state:

{¶47} "[1.] The trial court erred and abused its discretion by finding that the Defendant Jill Schmoldt failed to enroll [Ca.S.] in an IOP at Highland Springs pursuant to the terms of the parties' agreed judgment entry filed on August, 18, 2021."

{¶48} "[6.] The trial court erred and abused its discretion in finding Defendant Jill Schmoldt in contempt for a violation of the agreed judgment entry filed on August 18, 2021, because of her delay in enrolling [Ca.S.] in an IOP at Highland Springs."

{¶49} "[7.] The trial court erred and abused its discretion in ordering that the Defendant Jill Schmoldt pay $2,500 of the Plaintiff Daniel Schmoldt's legal fees."

{¶50} Appellant argues that the trial court abused its discretion by finding her in contempt of court for failing to immediately enroll Ca.S. in the Highland Springs IOP. She also challenges the order to pay appellee's attorney fees in the amount of $2,500 on the basis that the court erred in finding her in contempt.

{¶51} "'Contempt is a disregard of, or disobedience to, the orders or commands of judicial authority. Indirect contempt may include the disobedience of, or resistance to, a lawful order, judgment, or command of a court officer.'" *Miller v. Miller*, 11th Dist. Trumbull No. 2019-T-0048, 2020-Ohio-6914, ¶ 8, quoting *Dozer v. Dozer,* 88 Ohio App.3d 296, 623 N.E.2d 1272 (4th Dist.1993). "Where the contempt allegation is based on violation of a court order, the order must be clear and definite with respect to the precise conduct constituting disobedience." *Lanza v. Lanza*, 11th Dist. Lake No. 2023-L-024, 2023-Ohio-3531, ¶ 7, citing *Does v. Univ. Hosps. Health Sys.*, Inc., 2023-Ohio-2120, 218 N.E.3d 1082, ¶ 18-19 (11th Dist.); *Cain v. Cain*, 11th Dist. Portage No. 2017-P-0084, 2019-Ohio-184, ¶ 21.

15

{¶52} The burden of proof for finding civil contempt is clear and convincing evidence. *Kolenic v. Kolenic*, 2018-Ohio-1106, 109 N.E.3d 582, ¶ 18 (11th Dist.). "Clear and convincing evidence is * * * evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Janson*, 11th Dist. Geauga No. 2005-G-2656, 2005-Ohio-6712, ¶ 33. "A reviewing court 'will not reverse the decision of the court below in a contempt proceeding in the absence of a showing of an abuse of discretion.'" *Kolleda v. Kolleda*, 11th Dist. Lake No. 2013-L-069, 2014-Ohio-2013, ¶ 42, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981).

{¶53} A person charged with contempt of court for violating a court order may defend the charge by proving it was not in the person's power to obey the order. *Stychno v. Stychno*, 11th Dist. Trumbull No. 2008-T-0117, 2009-Ohio-6858, ¶ 38, citing *Courtney v. Courtney*, 16 Ohio App.3d 329, 334, 475 N.E.2d 1284 (3d Dist.1984). "Once a person seeking contempt has demonstrated a defendant's failure" to comply with the court order, "the burden of proof shifts to the defendant to prove" the impossibility of compliance. *Smith v. Smith*, 11th Dist. Geauga No. 2013-G-3126, 2013-Ohio-4101, ¶ 41 (Addressing the inability to pay child support).

{¶54} Appellant argues that she was unable to immediately enroll Ca.S. in the Highland Springs IOP. She asserts that she did not immediately enroll Ca.S. because Ca.S. had already begun the school year by the time appellant and appellee had an intake meeting at Highland Springs in August 2021. She argues that Highland Springs did not offer an inpatient treatment program, and the outpatient treatment program did not have any openings until September or October. Appellant also said that she and Ca.S.'s

16

doctors felt it would be better for Ca.S. to wait until the winter school break to avoid missed classes because "pulling her out of school would cause her more stress." Therefore, appellant did not enroll Ca.S. in the Highland Springs IOP until December 2021.

{¶55} Appellant admitted that she knew the legal requirements to immediately enroll Ca.S. in the IOP and did not enroll her immediately, seek to modify the court order, or provide documentation from Ca.S.'s healthcare providers to demonstrate why a delay was necessary. She said that despite the court order, she "took into consideration * * * [Ca.S.'s] medical issues." Appellant said that she "along with Ca.S.'s medical providers were "part of the decision" to delay enrolling Ca.S. in the IOP. Appellant said there was an opening one or two months out, but that she "went with the medical advice" and chose not to enroll Ca.S. until the winter break. She also admitted that Ca.S. improved after attending the IOP in December, that she struggled between August and December, and would have likely improved sooner had she attended the IOP sooner.

{¶56} The trial court concluded that appellant had provided an affirmative defense and was not in contempt for withholding parenting time from appellee with regard to Ca.S. refusing to spend time with him. However, the trial court said the "same conclusion is <u>not</u> true with respect to the issue of [appellant's] actions relating to her responsibility to" enroll Ca.S. in the Highland Springs IOP. The court found that appellee proved a violation of the terms of the August 18, 2021 Judgment Entry because appellant "waited to enroll [Ca.S] for a program to occur during the Winter School Break, 2021-22."

{¶57} We agree with the trial court. Appellant's own testimony indicated that Ca.S. could have been enrolled in the Highland Springs program by October at the latest and that doing so would have inured to her benefit. However, appellant did not enroll Ca.S.

17

until December based on her decision that it would be best for Ca.S. to avoid missing afternoon classes. Although appellant came to this conclusion by discussing the matter with Ca.S.'s medical providers, appellant did not seek a variance of the August 18, 2021 Judgment Entry, but instead decided, over appellee's objections, to delay enrolling Ca.S. in the IOP.

{¶58} The trial court did not abuse its discretion in adopting the magistrate's decision finding appellant failed to comply with the terms of the August 18, 2021 Judgment Entry and finding her in contempt therefor. Further, the trial court did not err in ordering appellant to pay $2,500 of appellee's attorney fees incurred in prosecuting his Motion to Show Cause.

{¶59} Accordingly, appellant's first, sixth, and seventh assignments of error are without merit.

{¶60} Appellant's fourth assignment of error states:

{¶61} "[4.] The trial court erred and abused its discretion by finding that Daniel Schmoldt should not be held in contempt for his travel with two of the minor children immediately preceding the President's Day weekend in February 2022."

{¶62} Appellant next argues that the trial court abused its discretion by not finding appellee in contempt of court in relation to his travel with Mad.S. and Co.S.

{¶63} The magistrate's decision noted appellant's testimony about the events surrounding the trip and appellee's alleged lack of communication about the trip, the misrepresentation about the return flight, and Co.S. missing one-half day of parenting time with appellant. However, the magistrate's conclusion of law on this issue found that appellant offered insufficient evidence to support her Motion to Show Cause.

18

Case No. 2023-G-0018

**{¶64}** We are mindful of the high degree of deference we are to exercise in reviewing a trial court's adoption of the magistrate's decision with regard to contempt proceedings. Our role is not to weigh the evidence but to ascertain from the record whether there is some competent evidence to sustain the trial court's decision. *See In re K.R.,* 2011-Ohio-1454, ¶ 30.

**{¶65}** The magistrate conducted a two-day hearing and heard testimony from appellant and appellee on this issue. It is noteworthy that counsel for appellant did not elicit any testimony from appellee himself about his alleged failure to provide timely flight information, his misrepresentation of the return flight times, and Co.S. missing parenting time with appellant.

**{¶66}** By way of contrast, appellee's Motion to Show Cause in relation to Ca.S.'s IOP included testimony from both appellee and appellant. Appellant herself offered her reasoning as to why she chose to delay Ca.S.'s enrollment in the IOP, which the trial court found was in violation of the August 18, 2021 Judgment Entry. With respect to appellant's claim that appellee did not provide notice for travel, appellant presented her Motion to Show Cause solely through her own unsupported testimony. The trial court did not abuse its discretion in determining that appellant did not provide clear and convincing evidence of appellee's failure to provide timely travel plans or cause appellant to miss one-half day of parenting time.

**{¶67}** Accordingly, appellant's fourth assignment of error is without merit.

**{¶68}** Appellant's fifth assignment of error states:

19

**{¶69}** "[5.] The trial court erred and abused its discretion in finding that the contempt charge relating to the court order of April 16, 2018, had been voluntarily dismissed by the Defendant Jill Schmoldt."

**{¶70}** Appellant argues that the trial court abused its discretion in adopting the magistrate's finding of fact that she voluntarily dismissed the portion of her Motion to Show Cause relating to the April 16, 2018 Judgment Entry with regard to appellee's failure to provide evidence of the $7,500 property settlement check.

**{¶71}** While it is true that appellant voluntarily dismissed the portion of her Motion to Show Cause relating to the $1,750 payment for attorney fees, the magistrate recited the remaining outstanding issues to be determined on the record and listed "the issue of [appellee] providing evidence of payment to the * * * $7,500.00 property division payment due in July of 2020" as one of the remaining issues to be determined.

**{¶72}** However, the magistrate's decision incorrectly indicated that appellant had also voluntarily dismissed this issue. Appellant properly raised this issue in her objections to the magistrate's decision. However, the trial court adopted the magistrate's decision and did not rule on this issue.

**{¶73}** Accordingly, appellant's fifth assignment of error has merit.

**{¶74}** Appellant's second assignment of error states:

**{¶75}** "[2.] The trial court erred and abused its discretion by finding that the minor child [Mad.S.] engaged in underage drinking while in the care of the Defendant Jill Schmoldt."

**{¶76}** Appellant argues that the trial court abused its discretion in adopting the magistrate's finding of fact that she admitted to an incident involving Mad.S. engaging in

20

underage alcohol consumption under her care. The trial court found "Jill admitted to an incident(s) involving [Mad.S.] under underage drinking while [Mad.S.] was in her care. Said incident had occurred at her residence in the Fall of 2021 and another in February, 2022, that caused [Mad.S.] to pass out." Our review of the transcript indicates that appellant acknowledged an incident that occurred under her care where Ca.S. consumed alcohol and was vaping while friends visited, that appellant had the friends' parents pick them up, and that later that night, Ca.S. overdosed on medication.

{¶77} However, appellant did not admit to any incident involving Mad.S. and no evidence supports such a conclusion. During the hearing, appellant testified that one of Mad.S.'s friends contacted her about Mad.S. consuming alcohol while she was with appellee. Appellant was unable to contact appellee and "made the decision to go over and pick her up." When appellant arrived, she found Mad.S. was "completely drunk." Appellant testified to a subsequent incident in February and said that she was contacted to pick Mad.S. up from school because she had passed out in the hallway. Appellant said that Mad.S. had spent the night at appellee's house and had been drinking the night before.

{¶78} In short, there was no evidence to indicate that Mad.S. consumed alcohol while she was under appellant's care. Appellant testified that Mad.S. had two incidents involving alcohol consumption. However, she said these incidents occurred while Mad.S. was under appellee's care. Appellant denied that these incidents occurred under her care and we find no evidence to indicate these incidents did in fact occur under appellant's care. Therefore, the trial court's adopting the magistrate's finding of fact that appellant

21

"admitted to an incident(s) involving [Mad.S] and underage drinking while Mad.S. was in her care" was an abuse of discretion.

{¶79} Accordingly, appellant's second assignment of error has merit.

{¶80} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed in part, reversed in part, and remanded. On remand, the trial court is instructed to rule on the portion of appellant's Motion to Show Cause relating to appellee's failure to provide proof of $7,500 property settlement payment. Further, the trial court is instructed to correct its findings of fact to reflect that appellant did not admit to any incidents involving Mad.S. engaging in underage alcohol consumption under appellant's care.


MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

22